RACHEL E. KAUFMAN (Cal. Bar No. 259353)
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881
rachel@kaufmanpa.com

*Attorneys for Plaintiff Kenneth Johansen and the Proposed Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**NATHAN ROWAN**, individually on behalf of all others similarly situated,

Plaintiffs,

v.

**DIRECT MARKETING GROUP LLC, VEHICLE PROTECTION SPECIALISTS LLC, DANIEL LAURENT** and **CARGUARD ADMINISTATION, Inc.**,

Defendants.

Case No.

## CLASS ACTION COMPLAINT

### Nature of this Action

1. Plaintiff Nathan Rowan ("Plaintiff" or "Rowan") brings this Class Action Complaint and Demand for Jury Trial against Defendants Direct Marketing Group LLC ("Auto Renewal Center"), Vehicle Protection Specialists LLC ("Auto Services"), Daniel Laurent ("Laurent") and CarGuard Administration, Inc.

("CarGuard"), to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making unsolicited, pre-recorded calls to consumers, including more than one call to phone numbers registered on the National Do Not Call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Defendants' actions. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**Parties**

2. Plaintiff is a natural person who at all relevant times resided in East Rochester, New York resident.

3. Defendant Auto Renewal Center is a Nevada incorporated corporation headquartered in Irvine, California that conducts business throughout this District and the United States.

4. Defendant Auto Services is a Nevada incorporated corporation headquartered in Irvine, California that conducts business throughout this District and the United States.

5. Defendant Laurent is an individual who resides in California who owns and manages both Auto Renewal Center and Auto Services, both of which conduct business throughout this District and the United States.

6. Defendant CarGuard is a Kansas corporation incorporated in Kansas and headquartered in Leawood, Kansas. CarGuard conducts business throughout this District and the United States.

**Jurisdiction and Venue**

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227 *et seq*

8. This Court has personal jurisdiction over Defendants and venue is proper in this District under 28 U.S.C. § 1391(b) because a portion of the events giving rise to this action occurred in this district, and one of the Defendant's principal place of business is in this District.

**The TCPA**

9. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

10. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

11. While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).*

12. "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

13. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

14. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day,. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

15. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

16. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

17. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last 6:19-cv-02008-BHH Date Filed 07/18/19 Entry Number 1 Page 4 of 10 5 visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. See id.

18. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

19. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

20. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone*

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## INTRODUCTION TO DANIEL LAURENT AND LAURENT'S EXTENDED CAR WARRANTY ENTITIES

21. Auto Renewal Center is a d/b/a of Direct Marketing Group, LLC.[3]

22. Auto Services is a d/b/a of Vehicle Protection Specialists, based on the fact that there is no corporate registry Auto Services and because the website for Auto Services is VehicleProtectionSpecialist.com.

23. Both Auto Renewal Center and Auto Services are owned/operated by Daniel Laurent, based on their corporate registries:

**Auto Renewal Center:**

| Title | Name | Address |
|---|---|---|
| Managing Member | DANIEL LAURENT | 9 MacArthur Pl, Santa Ana, CA, 92707, USA [4] |

**Auto Services:**

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=AUTORENEWALCENTER%20M190000051920&aggregateId=forl-m19000005192-cfcf3880-da3a-41c1-91fc-2ae3135eff8f&searchTerm=auto%20renewal%20center&listNameOrder=AUTORENEWALCENTER%20M190000051920

[4] https://esos.nv.gov/EntitySearch/BusinessInformation - search for Direct Marketing Group LLC

| Title | Name | Address |
|---|---|---|
| Managing Member | DANIEL LAURENT | 9 MACARTHUR PL, UNIT 2202, IRVINE, CA, 92603, USA |

[5]

24. Auto Renewal Center and Auto Services provide consumers with an extended car warranty that provides repair coverage for a vehicle after the manufacturer's car warranty expires.[6] [7]

25. Auto Renewal Center and Auto Services are effectively the same identical company, but registered under different corporate names.

26. Both Auto Renewal Center and Auto Services show similar addresses, both of which are PO Boxes for the same location in Irvine, California:




support@autorenewalcenter.com

6789 Quail Hill Pkwy, Suite 605 Irvine, CA 92603 [8]



[9]


[10]

*Figure 1 - 6789 Quail Hill Pkwy, Irvine, CA 92603*

[5] *Id.* – search for Vehicle Protection Specialists LLC
[6] https://autorenewalcenter.com
[7] https://vehicleprotectionspecialist.com
[8] https://autorenewalcenter.com/contact/
[9] https://vehicleprotectionspecialist.com/contact/
[10] google.com/maps – 6789 Quail Hill Pkwy, Irvine, CA 92603

27. Upon information and belief, Laurent is directly involved in the illegal telemarketing that his companies are responsible for, directing his employees to sell extended car warranty plans to consumers who are solicited using pre-recorded telemarketing calls.

28. To date, Laurent and his extended car warranty companies have been involved in numerous TCPA-related lawsuits which include:

| | Party Name | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| 1 | Vehicle Protection Specialists, LLC aka Vehicle Service Center (dft) | txedce | 4:2019-cv-00812 | 890 | 11/07/2019 | 12/20/2019 |
| 2 | Vehicle Protection Specialists LLC (dft) | madce | 1:2020-cv-10746 | 890 | 04/16/2020 | 06/05/2020 |
| 3 | Vehicle Protection Specialists LLC (dft) | madce | 1:2020-cv-11487 | 890 | 08/06/2020 | |
| 4 | Vehicle Protection Specialists, LLC (dft) | cacdce | 8:2020-cv-01218 | 890 | 07/10/2020 | |

[11]

| | Party Name | Court | Case | NOS | Date Filed | Date Closed |
|---|---|---|---|---|---|---|
| 1 | Laurent, Daniel (dft) | cacdce | 8:2020-cv-01218 | 890 | 07/10/2020 | |
| 2 | Laurent, Daniel (dft) | txedce | 4:2019-cv-00812 | 890 | 11/07/2019 | 12/20/2019 |

[12]

29. Despite these lawsuits Laurent continues to either direct his agents to place pre-recorded solicitation calls to consumers, or Laurent partners with a company that places the pre-recorded solicitation calls on his behalf.

30. Auto Renewal Center and Auto Services, or an agency working on behalf of these companies place pre-recorded telemarketing calls to consumers.

31. These calls are being placed regardless of whether Auto Renewal Center and/or Auto Services have the consent necessary to place pre-recorded solicitation calls.

[11] https://pcl-legacy.uscourts.gov - Vehicle Protection Specialists

[12] *Id. – Laurent, Daniel*

32. To make matters worse, consumers are receiving unsolicited calls despite having their phone numbers registered on the DNC and even despite requests for the calls to stop.

## Factual Allegations

### Consistent with Laurent's Direction, Auto Renewal Center and Auto Services Agents Cold Called Plaintiff's Cell Phone Number Using a Pre-Recorded message to Solicit His Business

33. Plaintiff Rowan registered his cell phone number on the DNC on June 4, 2005.

34. Plaintiff Rowan uses his cell phone number for personal use only. It is not used for business purposes.

35. For months prior to July 2020, Plaintiff received many unsolicited, unwanted calls from telemarketers regarding extended car warranties.

36. Plaintiff would press '2' to stop the calls, or whichever number the pre-recorded message would indicate to stop the calls and Plaintiff would also ask live agents to stop calling.

37. Despite these efforts that Plaintiff Rowan made to stop the calls, the calls still continued.

38. On July 8, 2020 at 1:13 PM, Plaintiff received an unsolicited text message to his cell phone from phone number 651-371-5714:

3:16

+1 (651) 371-5714

Text Message
Today 1:13 PM

Howdy, Andy, at the vehicle coverage plan team, please reach back at 855.295.0162 in reference to your 2015 Chevrolet car warranty.
reply CLOSE to end

39. Only July 9, 2020, Plaintiff Rowan called 651-371-5714, the phone number that the text message was sent from to determine who was responsible for contacting him.

40. Plaintiff first spoke with an agent named Laura who pre-qualified his extended car warranty needs, and then Plaintiff was transferred to an agent named Joseph who began the quote process.

41. Plaintiff mentioned Minnesota, which prompted Joseph to tell him that Minnesota is not covered for an extended car warranty and Joseph hung up.

42. Plaintiff called 651-371-5714 back. Joseph answered the call.

43. Plaintiff told Joseph that he lives in New York.

44. Joseph collected more details from Plaintiff and then passed Plaintiff over to an agent named Brandin Alexander who said he was the, "Senior Coverage Manager of Chevy."

45. Alexander provided a quote, making it clear to Plaintiff Rowan that this was a quote for a CarGuard warranty.

46. Plaintiff paid for the warranty, in order to confirm who the telemarketer was and was given the customer service number 844-273-9727.

47. 844-273-9727 is the phone number for Auto Renewal Center:



[13]

48. Plaintiff received an email shortly after the call that confirms the identity of Auto Renewal Center and Brandin Alexander:



Brandin Alexander
844-273-9727
Vehicle

2018 CHEVROLET EQUINOX
Current odometer reading: 36,955
VIN: *************163621
Coverage Plan
60 Months / 100,000 Miles
Platinum Deluxe
Expires: 08/07/2025 or 137,955 whichever occurs first
Deductible: $ 100
Plan Cost

| | |
|---|---|
| Subtotal: | $3777.00 |
| Tax: | 0.00 |
| Total: | 3777.00 |
| $ Down: | 195.00 |
| # Payments: | 24 |
| Monthly Payment: | 149.25 |

Please call me when you receive your paperwork so that I can answer any questions you may have.

Click Here to View Terms and Conditions
Auto Renewal Center | 6789 Quail Hill Pkwy, Suite 605 Irvine, CA 92618 | 844-273-9727

49. On July 16, 2020, Plaintiff received a pre-recorded voicemail from what he would later learn was a Daniel Laurent company using phone number 952-243-5254 stating: "I'm sorry I will remove you from our list thank you."

[13] https://www.autorenewalcenter.com/contact/

50. On July 17, 2020, Plaintiff received a pre-recorded voicemail from what he would later learn was a Daniel Laurent company using phone number 952-243-5254 stating, "I'm sorry, I will remove you from our list. Thank you."

51. On July 21, 2020, Plaintiff received another unsolicited pre-recorded voicemail on his cell phone from a Daniel Laurent-owned company using phone number 952-243-5254 stating: "I'm sorry, I will remove you from our list. Thank you.

52. On July 23, 2020 at 5:44 PM, Plaintiff Rowan received a pre-recorded call from Auto Services using phone number 952-243-5254.

53. The call began with an automated message from "Lisa" who said she was from the warranty department.

54. An agent named Michelle then came on the line to qualify Plaintiff Rowan's extended car warranty needs.

55. Once he was qualified, Michelle transferred Plaintiff to an agent named Brandon Balanos who stated that he was a Senior Coverage Specialist.

56. Balanos provided a quote and then transferred Plaintiff to Vanessa, who Plaintiff had spoken with previously.

57. Vanessa told Plaintiff that she already had Plaintiff's vehicle VIN number in her system so all she needed was payment information.

58. Plaintiff provided payment information to once more confirm which telemarketer had been harassing him with calls.

59. Plaintiff was then given the phone number 844-474-3386 as a customer service number, which, as was stated previously is the phone number for Auto Services.[14]

60. The warranty that Plaintiff received in the mail confirms that it was sold by Auto Services through the agent Brandon Balanos:

seller information
seller name AUTO SERVICES
phone (844) 474-3386 salesperson Brandon Balanos
web site
mailing address 6789 QUAIL HILL PKWY SUITE 535
city / state / zip IRVINE, CA 92603

61. Plaintiff Rowan never consented to receiving solicitation calls from any of the Defendants.

62. Plaintiff was not looking to solicit the services of any extended car warranty companies.

63. The unauthorized telephone calls made by and on behalf of the Defendants, as alleged herein, have harmed Plaintiff Rowan in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phones' hardware (including the phones' battery) and the consumption of memory on the phone.

64. Seeking redress for these injuries, Plaintiff Rowan, on behalf of himself and Classes of similarly situated individuals, bring suit under the

[14] https://vehicleprotectionspecialist.com/contact/

Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., which prohibits unsolicited pre-recorded phone calls to cellular telephones, including more than one unsolicited call to phone numbers registered on the DNC.

## CARGUARD'S LIABILITY FOR THE CALLS AT ISSUE

65. CarGuard is a vehicle service contract administrator.[15]

66. CarGuard fulfills the extended car warranty plans that companies such as those owned by Laurent, including Auto Renewal Center and Auto Services sell to consumers, as per Plaintiff's experience.

67. For twenty-five years the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

68. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[16]

15 https://www.carguard-admin.com/

16 *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

69. In that ruling, the FCC instructed that sellers such as CarGuard may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

70. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

71. CarGuard is very much aware of the illegal telemarketing practices that are used by its third-party sales vendors to sell extended car warranty plans.

72. The CarGuard Better Business Bureau "BBB" page is full of complaints from consumers regarding illegal telemarketing allegations. This is just a small sampling of those allegations:

- 08/03/2020

  This company has made 29 robo dialed calls to my cell. I am on the DNC list. They denied calling me so I bought the policy when they kept calling now I have proof from buying the policy that it was them, I would liked to be contacted by the company to reach a settlement

07/21/2020

Business calls constantly and hangs up on people. The are unwelcome to call me ever again.

- 06/25/2020

  Carguard Administration has repeatedly used a system that qualifies as an ATDS (Automatic Telephone Dialer System) to make illegal phone calls to my cell phone, violating the TCPA.

- 06/19/2020

  Representatives of this company call non-stop, several times a week pushing their crappy product. I am on the Do Not Call Registry and if I am lucky enough to talk to an actual person, they usually hang up as soon as I tell them to put me on their Do Not Call List. I have filed numerous complaints over the last year + with the FTC and a former complaint with the BBB. The calls keep coming and this company will take no responsibility saying that the people selling the policies are third party.

- 06/09/2020

  1. I am on the national do-not-call list yet the company is harassing me repeated with unwanted calls once every two days. On one call I took the option to decline future harassing calls but the option did not stop the calls. 2. The information provided in the phone message (pre-recorded) is a lie. It reports that the company has checked my vehicle records. No check of my No check of my vehicle records has been done. It says that my vehicle warranty is soon to expire. My vehicle warranty expired two years ago. These statement constitute deceptiveness in marketing. The repeated calls are undesired as I reported to the company when I selected the option to cease future calls.

73. In response to the telemarketing allegations, CarGuard typically responds:

To Whom It May Concern (BBB): CarGuard Administration, INC is an administrator of vehicle service contracts. We are paid a fee by third-party sellers to administer the service contracts that we sell. The sellers usually use the services of multiple administrators. We do not engage in any marketing directly to consumers of any type. Unfortunately, without the identity of the seller there is no way for us to suspend calls. If the customer can let us know who the seller is, we can e-mail them and ask them to stop calling this customer. If the customer can provide us the name of seller, please e-mail it to ***************************, and we will contact the seller and ask them to stop calling this customer. Signed, CarGuard Administration, INC

74. In the above response from CarGuard, CarGuard explicitly states that it is paid a fee for the services it provides to third-party sellers, such as Daniel Laurent. This means CarGuard profits from the unlawful telemarketing its third-party sellers engage in to generate business.

75. Auto Renewal Center and Auto Services were contractually required to promote CarGuard products on their telemarketing calls to potentially generate new customers, and did so, as they did with the Plaintiff,

76. In fact, CarGuard continued its relationship with Auto Renewal Center and Auto Services despite previously being sued for their violations of the TCPA.

77. CarGuard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts.

78. Moreover, CarGuard maintained interim control over Auto Renewal Center and Auto Services' actions.

79. For example, CarGuard had absolute control over whether, and under what circumstances, it would accept a customer.

80. Furthermore, CarGuard had day-to-day control over Auto Renewal Center and Auto Services' actions, including the ability to prohibit it from using pre-recorded methodology to contact potential customers of CarGuard.

81. CarGuard failed to make such an instruction to Auto Renewal Center and Auto Services, and as a result, is liable for Auto Renewal Center and Auto Services' conduct.

82. CarGuard also gave interim instructions to Auto Renewal Center and Auto Services by providing the volume of calling and leads it would purchase.

83. CarGuard gave further interim instructions to Auto Renewal Center and Auto Services by providing the states that those companies were allowed to make calls into and restricting other states that they could not.

84. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

85. Plaintiff Rowan brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **<u>Pre-recorded No Consent Class</u>:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called (2) using a pre-recorded voice message (3) for substantially the same reason Defendants called Plaintiff, and (4)

for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants (or an agent acting on behalf of Defendants) called more than one time within any 12-month period (2) for substantially the same reason Defendants called Plaintiff (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, and (4) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claims they supposedly obtained prior express written consent to call Plaintiff, or (b) they did not obtain prior express written consent.

86. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which any Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released. Plaintiff Rowan anticipates the need to amend the Class definitions following appropriate discovery.

87. **Numerosity**: On information and belief, there are thousands of members of the Classes such that joinder of all members is impracticable.

88. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Rowan and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

- whether Laurent's agents used an automatic telephone dialing system to place pre-recorded voice message phone calls to Plaintiff and the members of the Classes;
- whether the agents made those calls without prior express written consent;
- whether Laurent's agents placed calls to phone numbers that are registered on the DNC such as those of Plaintiff and members of the Classes without consent;
- whether CarGuard is vicariously liable for the agents' calls; and
- whether Defendants' conduct was willful or knowing, entitling the class to treble damages.

89. **Adequate Representation**: Plaintiff Rowan will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Rowan has no interests antagonistic to those of the Classes, and the Defendants have no defenses unique to Plaintiff. Plaintiff Rowan and his counsel are committed to vigorously prosecuting

this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Rowan nor his counsel have any interests adverse to the Classes.

90. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Pre-recorded No Consent Class)**

91. Plaintiff repeats and realleges paragraphs 1 through 90 of this Complaint and incorporates them by reference.

92. Defendants and/or their agents transmitted unwanted solicitation telephone calls to Plaintiff and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

93. These pre-recorded voice calls were made *en masse* without the prior express written consent of Plaintiff and the other members of the Pre-recorded No Consent Class.

94. The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**<u>SECOND CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

95. Plaintiff repeats and realleges paragraphs 1 through 90 of this Complaint and incorporates them by reference.

96. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

97. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[17]

98. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

99. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

100. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone

---

[17] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

101. Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call in a 12-month period by or on behalf of Defendants in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class are entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Rowan, individually and on behalf of the Classes, pray for the following relief:

102. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Rowan as the representative of the Classes; and appointing his attorneys as Class Counsel;

103. An award of actual and/or statutory damages and costs;

104. An order declaring that Defendants' actions, as set out above, violate the TCPA;

105. An injunction requiring Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

106. Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Rowan requests a jury trial.

DATED this 30th day of November, 2020.

Respectfully submitted,

By: /s/ Rachel Kaufman

Rachel. Kaufman
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Counsel for Plaintiff and the Putative Class*